Our final case of the afternoon is United States v. Taikwan Pritchett, No. 23-2005. Mr. Wallace, take a moment whenever you're ready. Good afternoon, Your Honors. Ben Wallace on behalf of the appellant, the United States of America. With the court's permission, I'd like to reserve three minutes for rebuttal. Of course. On the facts found by the district court, there was more than reasonable suspicion to stop and frisk Taikwan Pritchett. The district court reached the wrong legal conclusion because it viewed each of the facts in isolation, engaging in the exact sort of divide-and-conquer analysis the precedent prohibits. What should we do with the first fact? So you point out, well, there's a man, might have been playing lookout, yelled out, and the court said, you brought it up on reconsideration, too late. Is that correct? Is that out of the picture? Your Honor, we haven't contested the district court's conclusion that as a matter of building into the reasonable suspicion analysis, the court shouldn't consider that fact. I will say I think the court can consider it for purposes of when Mr. Pritchett looked over at the officer's vehicle and what that means in terms of Mr. Pritchett's knowledge that there was police presence. So as an independent matter, I wouldn't rely on the lookout fact, and we're not asking the court to, but sort of baked in to when Mr. Pritchett appreciated police were there, we think the court certainly can consider that, and the district court didn't say anything otherwise. Okay. There are some slight discrepancies between what the two officers say. You know, we're, in deferring to the trial court, presumably we shouldn't, you know, make too much of one version or the other, but how does, how do their differing accounts support reasonable suspicion if we take just what they have in common? So I don't want to resist the question, but let me first say that the government's view is that they're not inconsistent. We explain why in our brief. We think that they spotted Mr. Pritchett at different times, and that explains what on its face looks like inconsistency. If the court disagrees on that point. Even if it is an inconsistency, can we reverse the factual finding because there's an inconsistency or does it have to be clear error? So I don't think you would be reversing the factual finding, Your Honor. We believe the factual finding on that point to be that the defendant bladed. And so the district court found that despite the inconsistency. The factual finding is also that the court gave little credibility to the police officers because of the contradiction in what they were saying was happening. And isn't, is that not, if he's a credibility, is that not a factual determination and aren't we held to the clear error standard in that situation? Your Honor, no, I don't think there is an adverse credibility determination on the record. I don't think that the district court found as a matter of fact that the officers were incredible generally or with respect to this specific observation. And the court did not question that he had turned away, that in turning away, there was a bag that was turned away and thus hidden or satchel, and that he grabbed the woman and started walking away. And I think those are the more important points for analysis. Whatever we read about what happened or didn't happen with the potential lookout or whether he was walking towards the officers before or after, everyone seems to agree on those underlying historical facts. That's absolutely right, Your Honor. The district court says that in the fact section of its opinion at JA-5. It repeats it throughout its analysis at JA-16, 15, and 16. That's exactly right. The district court found as a fact that Mr. Pritchett turned the side of his body with the satchel away from the officers, found as a fact that he pulled a woman who was walking alongside him up against that satchel, and those are factual findings to which this court does owe clear error deference. Some other factual findings that I think the court owes clear error deference to and that are helpful to the government's case. So help me. Sure. So as I understand it, the factual findings that support reasonable suspicion are blading after looking in the officer's direction. Yes. Walking away from the officers at an increasing pace and the refusal to stop at their request, and then running into the house that Mr. Pritchett did not live in. Right. Are there other factual findings that the court made that we can rely on? Yes, Your Honor. What are they? Pulling the woman to his side up against the satchel. I think Your Honor mentioned that he picked up his pace, but that he did so in direct response to the police order, that the picking up the pace immediately followed the police order. I think Your Honor might have said this as well, but he picked up his pace several times. The shoving of the woman aside as he starts to run is another fact found by the district court. It could have been released. It could have been pushed. Does he indeed start to run? I mean, the district court found that he moved at a quicker pace, but it does not say that he ran, does it? I do believe that the district court found that he ran, Your Honor. This is, and I can point you to the specific transcript site, so at JA5 in the district court's opinion. JA5 talks about picking up the pace, 5 and 6. That's right. And I'm just reading from the transcript here. He was walking with and ran into the rear of the residence at 1313 East 28th Street. Okay, so when he gets into the residence, he runs into it. A couple steps before he reaches the residence, he begins to run, and that's also at 15 and 16 of the JA. This is the first line on page 15. And the parties stipulate that he doesn't live there, but is there any reason the officers should know he doesn't live there? Officer Williams testified below that he knew that Mr. Pritchett did not live there and he knew that because of prior police encounters with Mr. Pritchett. Is there any evidence beside the fact that he didn't live there to support that there was trespass? I would say the manner in which Mr. Pritchett entered the home, Your Honor. What about the homeowner's protest? So a couple points on that. The homeowner who is standing sort of at the face of the apartment, Your Honor, I think that protest really began sort of after Officer Williams was breached the entrance to the residence. So I watched the video. Let's assume I disagree with that. Okay. Okay, so proceed. Okay. So if you disagree with that, I think that the response from that woman is ambiguous, and as the government pointed out in its brief, when the woman begins to yell, wait, admittedly it is difficult to see from the body cam footage. But if you slow it down, you can see. If you slow down the speed, you can see. Yeah, I went frame by frame, and I was trying to do my best to parse out what was happening there. But I think that the woman is facing her home when she begins to yell out, wait, wait, which to Officer Williams, and, again, recall that we have to assess this from the objective perspective of an officer in Officer Williams' shoes, that could indicate that she's calling after Mr. Pritchett, wait, wait, don't enter my home, which is perfectly consistent with the trespass. I do want to say, though, even if the court finds on the facts that there is not objective reason to believe it was a trespass, the mere fact of running into a third party's home when you're being trailed by police is suspicious in its own right, and is a factor that the court can take into account in the reasonable suspicion analysis, even if the court finds that the trespass evidence itself is lacking. So that's yet another factor that stacks on top of. You're not contesting. This case is not exactly war-level. If I were the one who had decided this case as a district judge, I think I would have come out the other way than the district judge did, but I still find it very difficult to find any clear error in how the district judge did come out, and so at this point in the case, the fact that I would have decided differently is immaterial. The fact that you need to show clear error is very material, and you said you're going to show it by a combination of the factors that they should have been taken altogether. Can I say a word? But you're not taking issue with the historical facts, right? You're taking issue with either you meet the Wardlow standard or it's not reasonable suspicion legal component, correct? That's absolutely right, and Orneas, the Supreme Court case, tells us clear error for factual findings in this circumstance, but de novo review for whether those historical facts add up to reasonable suspicion, and that, respectfully, Judge Roth, is where I think you and I might be having a disconnect, because I do think it's incredibly material that if Your Honor were deciding this below on the same exact facts that the district court found, Your Honor says you would find that there's reasonable suspicion. That's the inquiry we're engaged in here. It's de novo review on whether or not the historical facts. Every judge doesn't have to decide a case the same way. I was on the district court for five and a half years, and I understand the difference. Well, the difference in each case, the difference in each judge, but in every case, the district judge has credibility determinations that the judge is forming from listening to the parties' talk, and here the judge, in fact, talks about her concern that the police witnesses were inconsistent in their statements, and the fact that she was concerned about that, I might not have been concerned about that. I think it's easy to understand how I could come to a different conclusion than she did without her having committed any clear legal error. I think that's absolutely right, Your Honor, and I think Your Honor can accept every single one of the factual findings of the district court and then say at the end of the analysis, and now it is the Third Circuit's job to apply de novo review in determining whether those historical facts add up to reasonable suspicion. No deference owed to the district court, and what we're inviting the court to do here is exactly that. Accept every single one of the factual findings of the district court and conclude that just in stacking those up, they do cross the low threshold that is reasonable suspicion. Let me say one word, Judge Roth, on the inconsistency that the district court found below. You're right, the district court found an inconsistency between the officer testimony, and so out of respect for the district court's factual findings, maximal respect if you're going to pay clear error deference, take the account that is less favorable to the government and more favorable to Mr. Pritchett. We think that's Officer Rosario's account. Officer Rosario said that Mr. Pritchett was already walking southbound, only angled his body slightly, and continued walking southbound. That's still reasonable suspicion. There's still a factor that contributes to reasonable suspicion. Well, stop there. What about that gives you reasonable suspicion? Break that down for us. It's the angling portion specifically, Your Honor, the angling of his body away from the police vehicle. So blading, furtive movements alone. You need nothing else. That's enough for reasonable suspicion. No, that's not what I'm saying, Your Honor. I'm just saying that that blading component is one factor that gets mixed into the reasonable suspicion calculus. Okay, so that's the one factor. What's the next? Pulling the woman to his side, walking out of view at a quick pace. Now, does he have a constitutional right not to have an encounter with the police? He absolutely does. What does that look like? So if he has a constitutional right not to have an encounter with the police, does he have to stop and not have the encounter? What we read, Florida v. Royer, in those cases to mean, Your Honor, is that if that's all you have, him walking away from the police, that is insufficient for reasonable suspicion. If failing to comply with an order is all you have, insufficient for reasonable suspicion. But even still, those things can be considered in the reasonable suspicion calculus. And this Court's precedents tell us that. Cases like Bonner tell us that disregarding orders can be a factor that adds to reasonable suspicion. Cases like Valentine tell us that walking away from the police, even absent an order, can be a factor that gets baked into reasonable suspicion. So you're absolutely right. He has a constitutional right to refuse contact with police. But that factor, in combination with everything else in the totality of the circumstances analysis, is on these facts one thing that does contribute to reasonable suspicion. I say that's my time. All right, we'll get you back on rebuttal. Whenever you're ready. Good afternoon, Your Honors. My name is David Pugh, and I'm here on behalf of Tyco and Pritchard. And I will explain for the reasons that I will say, Your Honor, why the Court should sustain the lower court's decision. Your Honor, I think it's most important that I begin by clarifying some of these aspects of the facts found by the lower court. There was an argument made by the government that the lower court found that Mr. Pritchard had turned his body away from law enforcement. Your Honor, that's not an interpretation of the facts that I think can reasonably read from what the court said. What the court did find, and it was very clear when it illustrated its decision, is that there was a slight turn. Now, the court does use the word blading, but not in the same context as the government. The court was very clear in its decision that Mr. Pritchard was always continuing in the same direction, with the same side of his body always facing law enforcement, and the satchel on the opposite side of his body for the entire time. The court was very clear in its decision to not reopen this, or I should say the reconsideration, to deny the reconsideration, in stating that both officers were testifying to the same point in time. On page five, appendix five, I see the defendant looked in the direction of the vehicle, and after he looked, the officer saw the defendant turn the right side of his body, the side on which he carried the satchel, away from their vehicle, grab a woman who was standing nearby, pull her clothes, and walk at a fast pace. And they don't couch this as according to the officers or anything else. The court accepts that. Now, there's some conflict in the next sentence about whether he's facing north or south, which direction he turned, but he did turn his body. The court accepts that. Your Honor, I would disagree with that. On the appendix 16 to 17, the court says that he slightly altered his body position, and it points out the contradictory nature of the testimony. And, Your Honor, I would point out that that contradiction can be found in appendix 92, 1 through 10, and 9820 to 101.1. And that's where Officer Rosario testifies, in complete contradiction to Officer Williams, that he was always heading in the same direction. Now, Your Honor, he does this on direct and on cross. So you don't dispute what your friend says on the other side, don't you? On the last, the ultimate decision about whether all these facts add up to reasonable suspicion, we review de novo. It's just we have to defer to the facts as the district court found them in unclear error review. Absolutely, Your Honor. And I will point out that if you look at the testimony of the officer, he's unclear how to explain what actually the blading is because Mr. Pritchett never changes the direction that he's walking, and he never changes which shoulder is facing him. Now, it's completely agreed upon by both parties that the satchel is on the right side, away from officers on the opposite side of his body. And Officer Rosario testifies when he tries to explain, well, how can you blade if you don't change which shoulder is facing? He says, well, he bladed the front of his body by slightly leaning forward. Without an explanation what it was he was trying to hide in the front of his body because the satchel is on the right side and how that in any way accomplishes anything in hiding the satchel on his right side. And there's too much emphasis by the government on the value of the fact that Mr. Pritchett placed his arm around the woman and pulled him next to him because, again, the satchel was already on the right side of his body. That's not what the court says in Appendix 16 to 18. In 16 to 18, they say, okay, we're rejecting high crime area. And the government doesn't once try to resurrect the high crime area point here. But then in Appendix 16, they accept there's a signpost number one, defendants blading away from the unmarked vehicle and pulling a woman to the side on which he carried a satchel. And then number two, they accept he walked away upon looking towards the vehicle and picking up his pace after the officers issued commands. And third, they accept that after the officers began running towards him, the defendant ran away. So those are the historical facts that the government is arguing based on. And the court at Appendix 16 accepts those facts, but it's looking at them through the Wardlow lens. And the government says, you're treating this as if everything is a Wardlow case, and we're not claiming this is exactly Wardlow. Your Honor, I apologize, but at the bottom of Appendix 16 to 17 is where the court illustrates the fact that it talks about the totality of circumstances and talks about the contradictory nature of the testimony and that how, in contrast, beginning at the bottom of 16, that there is testimony that Mr. Pritchett was already facing south, that he looks in the direction of where law enforcement is, and then only slightly altered the position of his body. And it gives the site to where it pulls that from. Okay. So, Your Honor, that slightly altering, Your Honor, is based off of the testimony of the officer, as I said, where he says he just looked forward. That's a slight altering. We have to add that. The court says, this isn't a Wardlow case. Fine, in Paragraph 1. But then what about the second and third facts about walking away, after looking, picking up the pace, running into the house? They're not saying this is exactly Wardlow. They're saying when you add those other facts in to some kind of turning, maybe it was a slight turning, but it's a turning of the side where the satchel is, that collectively we shouldn't just treat this as Wardlow or nothing. That's a legal question. Well, certainly, Your Honor, and I will go on to explain some other facts. But I will point out, Your Honor, that it's not a turning away of the side of the satchel because that's already on this side. And so because this shoulder stays this way and this shoulder stays this way, he's not turning that away. Your Honor, he — That's not how the court put it, that, hey, the satchel is facing them or something, not suspicious at all. The court just says, okay, it wasn't such a pronounced turning. We're not going to treat it like headlong flight. Fine. Fine. Let's say that. But why can't those other facts add together with that one? I understand, Your Honor. I will say I think the site from the transcript helps explain that. But, Your Honor, the court goes on to point out that there's no — that the record doesn't indicate that Mr. Pritchett was aware that law enforcement was there. And the court goes on to point to U.S. v. Castle out of the district — the appellate court in D.C., Your Honor, to point out the fact that that factor is significant in determining whether his action is evasive or furtive because if he's not aware of law enforcement's presence, then, therefore, his action is just innocuous continuation of his behavior that was going on before law enforcement arrived based off of the testimony of Officer Roseo. In addition, Your Honor, the testimony also goes on to say that Mr. Pritchett didn't even begin to walk a little bit faster until officers were running. So when he first — when they first arrived, he just continues walking as he was before. The district court says nothing that casts doubt on the bit about grabbing the woman, bringing her with him, and then pushing away or whatever that is. So we can add that to the walking away from them. And then there's the issue about, well, what about going into the back of the house? And was it a trespass or wasn't it a trespass? But the district court doesn't cast any doubt on the movements with the woman. No, there's no question that he certainly pulls the woman towards him. And that's consistent with both of the officers. But the district court doesn't seem to weigh that at Appendix 16 or 17. So it doesn't explain why that — the — whatever turning, however slight it is, plus the grabbing of the woman. And then there's the issue about what happens. But we take — we take the district court's kind of — okay, we discount a little bit the blading stuff. But then we credit fully the grabbing of the woman. And then we have the going into the back of the house where, okay, maybe it wasn't trespassing, maybe they weren't fearful. But he's running into a house that, you know — so he's getting away from the officers when they're picking up their pace. Well, from a factual standpoint, the court did find it's not headlong flight. And not headlong flight. But he's still picking up his pace and getting away. So we have to add at least those facts together. And it doesn't have to be a headlong flight exact Wardlow case to add up to reasonable suspicion. No, no, it doesn't, Your Honor. But the entering of the back of the house, I think the court makes quite clear that the video demonstrates that the protests were towards the officers and not towards Mr. Pritchard. And so, therefore, from the officer's standpoint, they would have no reason to believe it's a trespass. Merely an entering of the back of the property, which he was allowed to do because he didn't have to have — Yes, but he's entering pretty hastily into some back door away from officers who've called police. Your Honor — Yes or no? He is doing that, Your Honor. But those facts would line up with U.S. v. Nevado, which is a court — a decision added to this court where they found an individual was on the porch of his house and had law enforcement approach. And they saw him engaging with another individual who was displaying a firearm. So it was a firearm that wasn't in question. They could visibly see. And when police approached and ordered him to speak with them, he gets up and runs directly into the apartment building, up into his apartment. And the court found in that case that just because he had fled away from them, it wasn't enough. Okay. And they saw a firearm. Okay. But there isn't this, like, prolonged kind of they're getting out of a car, he's walking away, he's turning some, he's grabbing a woman. Like, this is a different set of facts I get. Like, he's not — if it was just, I get up off my porch and I go into my house, Nevado might be on point. But this is a little different. It is a little different, Your Honor. But again, in the beginning, first, there's no evidence that he's — or there's not evidence to prove that he understood that law enforcement was there. That he's just walking away from an unmarked vehicle that shows up on the street. But then they call police. And it's not like, oh, okay, I'm relieved. I thought someone was going to mug me. It's like, I really want to get away from them once they call police. So he's done some furtive stuff before. And then they call. And then he speeds up. And we know he's running by the time he gets into the back of the house. Because the court uses the word ran. The court does say it appears that he ran merely a few yards into the house. So we have to add those things up. And there's no precedent exactly on point. But I do think it's telling that Judge Roth said, hey, if I were the judge and I saw all these facts, isn't this a profound? I'm like, I would have added them up. Your Honor, I would point to another decision out of this court, U.S. v. Alvin, where an individual saw law enforcement approach. And he gets up and hides behind his vehicle. So there's no question in that case that he knew it was law enforcement. No question that he was deliberately trying to avoid contact with them. And still the court found in that case that there wasn't reasonable suspicion for seizure. Because all they had was an avoidance of law enforcement. As the court is well aware, that is allowed. Pardon me? The case has no bearing on whether or not the district judge here committed clear error. And again, although I understand the issue, I fail to see how the individual findings of the judge are clearly erroneous. Nor can I find how her accumulation of the various factors she considered are clear error in the way she gave them. Because I think there's a great deal of dependence on the discretion of the district judge and on the credibility that the district judge gives to the police officers. So I think that is why I can decide it one way and another district judge can decide it another way. But under Ornelas, you conceded that ultimately how we gauge it on the historical facts as found, that's de novo review. Yes, Your Honor. Certainly what the facts mean in terms of the law is de novo review. Whether they amount to reasonable suspicion or not, that's a legal standard.  Yes, Your Honor. So you're saying the facts that we have are carrying the satchel on the side, a slight turn, and pulling a woman toward him before he knows the officers are there. And so you're saying, you pointed us to a case, U.S. v. Castle, that says, all right, they're not part of movements if you don't know the officers are there. Correct. And then the next that we have is walking away from the police officers, increasing the pace despite their requests. And your point there is that can't be enough because there's a constitutional right to do that. Absolutely. And then the next thing you have is running into a home that doesn't belong to him. When you have a video that shows what it shows, all of us can watch the video, but shows him going into a home that doesn't belong to him, potentially no other facts to suggest trespass. How does that equal reasonable suspicion? You put together not further movements because you don't know the officers there, constitutionally protected activity because you're walking away from police officers and you have the ability to do that, potential trespassing with no evidence of trespassing except walking into a home that you know is not his. When there's protest, but you're arguing the protest is clearly toward the police in the video. Correct, Your Honor. And that does add up to reasonable suspicion. And I think what's really illustrative when we look at the cases put forth by the government, the cases are consistent in that they have more than that. The number of the cases are involved tips where police officers even received a 911 call or a tip where someone came up to him face-to-face. I mean, even though we have a tip and you still didn't have enough, right? That would be correct, Your Honor. Or you have situations in which law enforcement actually sees a firearm. I gave the illustration in the Vado case. There's still Stegall, Peter's Township, where law enforcement sees a firearm. The USB Brown, the 2014 case, not the 1998 case, law enforcement sees a firearm. So the cases are very consistent in that there's more than what we have here in order to justify the seizure. In this case, Your Honor, you've laid out the facts correctly as to what's here, and it's insufficient to amount to reasonable suspicion. And I see that my time is expiring, but if the Court had additional questions, I'd be happy to answer them. Thank you. Let me ask the government. So let's assume we can't be confident that he knew there was a police vehicle there specifically. Should we nonetheless read what happened as furtive just because it's odd, it's hard to see any other explanation of what he did? Or is there a reasonable alternative explanation on which this isn't furtive? Your Honor, maybe if those two behaviors by the roadside are the only thing Mr. Pritchett did, there would be some reasonable alternative explanation that would defeat reasonable suspicion. What the totality of the circumstances requires us to do is view the entire event. And that event includes behavior that is unambiguously a response to police presence. Officer Williams is 15 yards behind him calling out, stop police, and Mr. Pritchett picks up his pace and ultimately runs. It's undisputed, I think, that at that point, Mr. Pritchett knew he was trying to evade police. And that casts light not only forward on him running into the house, but casts light backward onto the behaviors he engaged in by the roadside. If you're Officer Williams yelling stop police to a person who instead speeds up, it is objectively reasonable for you to think, oh man, that stuff he did at the roadside, maybe I couldn't have been sure before, but now I am. That was a furtive movement. He was blading. He was pulling the woman to his side to cover up the satchel. And on that point, the blading, Your Honor. There is nothing in the record to indicate that he had the slightest idea. Nothing in the record, well, there is nothing in the district court's decision to indicate that he had the suspicion that it was the police. Even if you reflect backwards, the finding of the district court was that clear error. And I don't think it's clear error. Right, Your Honor. I don't think there was ever a factual finding whether Mr. Pritchett did or did not know it was the police. In fact, in the reconsideration motion, the district court is at great pains to say, all I was trying to say in my initial opinion is they don't know he had personal knowledge what their vehicle looked like. Not some sort of broader finding on knowledge. On the knowledge point, I just want to talk about Castle, the D.C. Circuit case, for one second. Castle, Mr. Pugh is right, Castle says that furtive movements are consistent with evasion to, attempts to evade the police only if the person knows that they're there. But Castle goes out of its way to say this isn't a case where the person looked at the vehicle and then engaged in the evasive behavior. This one is. Castle goes out of its way to say this is not a case where a lookout called out. This one is. And I think the court can consider that for the purposes I talked about earlier. Two last points in my 30 seconds, and I'll make them quick. This is not a Wardlow case. The government is not arguing that it's a Wardlow case. It's two paths to reasonable suspicion. One of which is sort of the Wardlow shortcut, I guess I'll call it. And the other is full totality of the circumstances analysis. That's what we're arguing here. And Judge Bevis, I think you were right on in pointing to that paragraph, the first one under the totality of the circumstances heading. It's at the top of Appendix 16. And I'd invite the court just to look at that paragraph where the court lists out all the facts that are at play here. Clear error deference to each one of those factual findings. But if this court says that in reviewing those facts, de novo, they accumulate to reasonable suspicion, then the court should reverse and remand so that the prosecution of Mr. Pritchett can proceed. Thank you, Your Honors. Thank both counsel for their very helpful briefing and argument. We'll take the matter under advisement. This court will adjourn, but first we'll greet counsel at sidebar.